The Circuit Court of Appeals, we have three cases to be submitted today on oral argument and we begin with United States v. Ducksworth. Mr. Jupiter, nice to have the main man here. Thank you, Your Honor. Good morning. I represent the appellant, Andrew Ducksworth. Your Honor, the District Court erred when it found that Hattiesburg Police Department officer Freelix's suspicion that two occupants of a car with a malfunctioning taillight were armed and dangerous. That conclusion was not supported, reasonably supported, by articulable facts. The subsequent invasive feeldown of Mr. Ducksworth's primary was a violation of the Fourth Amendment. This court must reverse and vacate the conviction and find that the subsequent discovery of the firearm must be suppressed. This police encounter involved a relatively inexperienced police officer who stopped the vehicle for a minor traffic offense. While Pennsylvania v. Mims and Maryland v. Wilson allow an officer to order the driver and occupants of the car to get out of the car, unless there is reasonable suspicion to believe that the person is armed and dangerous. So isn't the key legal question here, there's several questions you're raising, but isn't the key legal question the extent to which we can consider the driver's situation or the behavior of the driver and impute that to the passenger? I think that that is among the key factors that we are looking to in terms of how the district court erred. And we think that there are a number of things that distinguish this particular case from the case that the government seeks shelter from. First of all, there were no further movements testified to by officer Freelands. There was no nervousness noted. There was no flight in this case. There was no questioning by other than, do you have a driver's license? One or two questions, no identification by officer Freelands and no asking any questions of a driver or the occupant before he went straight to the onerous task of laying hands on both the driver and Mr. Duxworth. There was no gun-shaped bulge that he saw on Mr. Duxworth before he started this field bound. And there was no testimony to support the conclusive restatement that this was a high crime area. The reasonable suspicion required under Terry is specific to the person who is being detained. And in this case, the person who eventually was frisked. The officer must point to specific facts that tend to show that this supportive conclusion that the person is armed and dangerous. This court gave very specific guidance to the officer who runs into the situation, the Pennsylvania versus Mims and Wilson situation, where someone, one of the occupants who has been ordered out of the car claims a disability. And it gave very specific language. Officer may open the door and conduct a minimally necessary visual inspection of the occupant's person. That was the specific language this court used. That limiting language was to ensure that police officers would not subject a disabled passenger to physical intrusion on their person without reasonable suspicion. There are distinguishing facts in Meredith that alluded to earlier. The passenger was moving around before the officer opened the door. And the officer can see a gun-shaped bulge in the defendant's pants before he proceeded to a frisk. Replacing the Mims, Wilson, Meredith analysis aside for a minute, we can go back to the two-step inquiry of terror. It's the basic inquiry. The stop has to be justified at its inception. And then the officer's action must be reasonably related in scope to the circumstances which justify the interference in the first place. You don't challenge the initial stop? I don't challenge the initial stop, Your Honor. It gives us the context of what that officer was facing, a malfunctioning tag light. And that is where the subsequent actions went overboard by Officer Freelix and eventually led to the discovery of the firearm in Andrew Duckworth's private area. So where specifically in the sequence do you say it goes around? You don't challenge the stop. So where? It starts with the driver. So where in your view does it skew? Well, while Mr. Duckworth would not be able to challenge the suppression or challenge the discovery of Sledge's firearm, the discovery that was done by Frisco Sledge should not be used to support reasonable suspicion on Mr. Duckworth because all of it was unreasonable. All of it went beyond what Terry allows. All of it went beyond what Meredith allows. So the totality of the circumstances failed to reach that level of reasonable suspicion to warrant an officer laying his hands on Mr. Duckworth, and particularly in a manner that he described in the record in this case. But do you say that Judge Sterrett imputed the actions of Sledge to Duckworth in his analysis? I mean, I read his ruling. Is that what you're arguing? Is that the first he called? Yes, Your Honor. He did, and in fact, I think that the particular part of the record is and would have been when he indicates, Judge Sterrett particularly indicates in his ruling that it was based on Sledge's lying and what Sledge had in the same area where Mr. Duckworth was searched. In United States v. Hill, this court held that a third party's invasive conduct was a relatively diminished persuasive value in determining reasonable suspicion. In that case, the police pull up to a parked car in a purported high-crime area, and the passenger got out of the car and starts to briskly walk away. And eventually, the court used that brisk walk away, as the district used that, and imputed it to the defendant. And this court reversed that particular ruling and said that invasive persuasive value of the passenger's movement vis-a-vis reasonable suspicion of Mr. Hill is relatively diminished. Similarly, the driver's concealment of the firearm in this case was of relatively diminished persuasive value with respect to finding reasonable suspicion of Andrew Duckworth. Are you suggesting that we reject the approach taken by the First Circuit in the Tiru Plaza case? I do think that the court should reject it, particularly if the court is finding that only what was found by the driver in that case could be imputed to the defendant passenger, Mr. Tiru. So, I mean, as you know, what the court said there was the discovery, that the driver had a firearm concealed in his waistband is a situation that gives rise to a reasonable concern for officer safety, especially when the driver is not alone. Yes, I don't think that this court should adopt that part of its reasoning, but I do think there are some distinguishing factors in that case, as there was in United States v. Thompson, because in both of the cases, they were looking to the specific suspicion of the car being suspected to be stolen. So, although Tiru started off as a stop, as a traffic stop, when they spoke to the driver, they didn't press the driver at first, they asked him questions, and then as a result of the answers to the questions and their visual inspection of the car, they suspected that the car was stolen. So, similarly in United States v. Thomas, that this court had, where there was, the police officers were actually out investigating a stolen car, and actually identified the stolen car, and saw Mr. Thomas standing next to the stolen car, they related, and talking to the passenger, the government cites this as evidence that you can impute a reasonable suspicion from one person to another, and that misses the point. The whole point of Thomas is that there was the, Mr. Thomas' connection to a stolen item, the car being a stolen item. Well, as Judge Smith alluded to you in reading from the case, here, Judge Starrett said to you, I'm saying that Mr., the driver had concealed his weapon in his groin area also, and when it was found, it would appear to be a reasonable legal search, and to suspect that the passenger may have done the same thing is not unreasonable. There was plenty of time for both the occupants to conceal the pistol, and that's an unusual place to conceal a pistol, especially a sizable semi-auto. But what I'm saying is these things build, it's a totality of the circumstance. When you catch one guy who's lying to you, he concealed his gun in his groin area, and you go to the guy in the passenger seat, and you attempt to do a pat-down, I'm sure the officer was uncomfortable with the circumstances, but he did what he needed to do. He patted him down. That's what he says. Your argument to us is that that portion that, sir, should be excludable from a totality of circumstances announced. Is that your argument? Yes, Your Honor, and for two different reasons. One is for what I just alluded to earlier, is just that this is not a case where you have the actual car, you have reasonable suspicion of like a violent armed robbery that you had in Thomas, okay, where you had multiple people, you're investigating a violent crime, you actually see the article, the car that was the subject of that violent crime, you see several people next to the car. Or in the case of, I also think we find more support for our argument in Wyoming versus Hollywood Supreme Court case signed by the government. That particular case, the Supreme Court distinguished this was a search of a purse, and it did not involve the touching of a person's body. And in fact, the Supreme Court, the United States Supreme Court distinguished the cases cited by the appellant and the two cases cited by the Wyoming Supreme Court because of the difference between the search of an item and the search of a person. So let me just give you a little bit of background before I head up the Public Defender's Office. In your reply brief, you didn't mention the Wyoming case or the Thomas case or the Tiru Plaza case. And I'll just tell you, I've read a lot of briefs in my career, and my red flag always goes up when the red brief, the appellee's brief relies heavily on some authorities, and then the appellant has an opportunity in the gray brief to respond and doesn't respond. And that red flag tells me that the cases may be dispositive, and that there's nothing that could have been said in reply. So I mean, I'm just giving you some gratuitous advice that you need. That's why your reply brief was very short. You had plenty of opportunity to respond to those authorities, but you didn't. You've responded to them today, which is helpful. Thank you, Your Honor. I appreciate the advice, and I apologize for not responding to those in my reply brief. Because after, in preparation for this oral argument, I thought it was substantial that the Supreme Court distinguished the Wyoming versus Houghton case based on the different degrees and actually talked about Ibarra and talked about DeRay or DeRee and held that, particularly because of the Wyoming v. Houghton case, it was undisputed that there was probable cause to search the car after the driver of the car indicated that he used, after the officer found a high-return vehicle that he used to take drugs, and the officer was searching the car. The only issue in that case, really, was whether or not the officer should have stopped upon seeing a person there that was claimed by Houghton. And in this particular case, it was distinguished, and he distinguished it between the Ibarra case, their precedent on that particular issue, based on the fact that it was, this was not a touching-up person, and it certainly was a touching-up person for Mr. Duxworth. For those reasons, where I'm asking this court to vacate the conviction and have a holding that indicates that evidence must be suppressed. Mr. Jupiter, did I understand you correctly to say earlier that there was no evidence before the district court that this was a high-crime area? There was no testimony from the officer other than him saying, yes, it's a high-crime area. He gave no other testimony. Why? Regarding what crimes, regarding the geographical parameters, or regarding his basis for that information. Why wasn't his testimony that it was a high-crime area sufficient? Why did he have to give all of those other details? I think it's, I think he has to at least give some guidance as to, I think until this court, and in McKinney, this court talked about the high-crime area, and particularly, I believe, in McKinney, in terms of what are the geographical parameters of what he's talking about. If he does not, there's no, there's no, we're just looking at an officer just saying it's a high-crime area, then there's very little value to this court in judging whether or not that has, and what kind of bearing that should have on a reasonable, suspicious conclusion. What about the fact that the district court found it credible? I think that we take issue with the district court. Part of what the district court did was cite a murder that happened several years ago, and almost in the sense that the district court was taking judicial notice, and we think that that was improper in the district court's conclusion. All right, thank you, Mr. Jupiter, and you saved time for rebuttal. Ms. Cole? Good morning, Your Honor. Good morning. May I please support Shondrell Cole for the United States? Your Honor, it's the United States position that the district court correctly denied the motion to suppress in this case, and as such, the district court's judgment should be affirmed. Your Honor, as the court, Your Honor, as you all are aware, this took place at night. This was a police officer who was alone when he conducted his traffic stop, and as such, he was outnumbered two to one. It's our position that this hearing case gave him the authority to not only search or pat down the driver of the vehicle, but once he patted down the driver of the vehicle, and before that, when he had asked the driver of the vehicle if he had any weapons on him, the driver, I believe, twice denied that he had any weapons on him. The officer then noticed, or once he did the pat down, he noticed the bulge in the groin area of the driver, which is an unusual place to conceal a firearm. As such, the officer had the authority to then the driver into custody, and for his own safety, for the officer's safety, he was entitled to then approach the passenger, question the passenger as to whether or not he had any firearms on him, and conduct a limited frisk of the passenger to see if he had any firearms on him. Did the passenger's disability here make a difference? Your Honor, I think it makes a difference because the passenger, based on what the passenger told the officer, he was disabled, and in fact, there was a, I believe, a walker in the backseat of the vehicle, which led the officer to believe that the passenger was, in fact, disabled. Based on that, the passenger was not able to get out of the vehicle, which means that there could have been firearms concealed in a number of places that the officer would not have been able to see, given the passenger who was seated in the car, not only on his person, there could have been firearms located in the glove box of the car under the seat. So, I think that because the passenger was disabled, and I believe it was the Meredith case that spoke to the passenger also being disabled, and the officer did conduct a frisk of the passenger as well. What about Mr. Jupiter's argument to us that the high crime area notion by the officer, you heard his response to Judge Ramirez's questions, and Mr. Jupiter argued that there would need to have been an extrication of a factual basis for that, the geographical area, et cetera, et cetera, as opposed to the statement by the officer. What's your response? Your Honor, I believe taking into account the officer was an experienced officer, this was an area that he was familiar with, and the fact that Judge Harris had noticed the fact that it was also a high crime area. Now, that statement alone is not sufficient to give the officer the authority to conduct the frisk of the passenger, but I think when you look at the totality of the circumstances, as we've seen in the Terry case, that's taken into account with the time that the traffic stop occurred, the fact that it was dark, the fact that the officer was outnumbered two to one, the fact that the driver, after denying at least twice that he had a firearm on him, had a firearm concealed in an unusual space or unusual place, I think taking that all into account gave the officer the authority to search the passenger, pat down the passenger. Your Honor, does the United States take a position on what the rule should be about the extent to which the behavior or the circumstances of the driver can be imputed to the passenger for purposes of any kind of a search or a pat down? In other words, is there a need for us to have an additional published authority on that? If we did, what would it say? What would the rule say about that? If you don't have a position in the United States, that's fine. I just want to know because we need to know whether we just addressed this case in an unpublished opinion or whether there's some kind of further explication of the law that we need to make. Yes, Your Honor, and I believe there are at least two cases on point that speak to the driver's actions and how they can be connected to the passenger. The United States versus Wilson, the court recognizes the relationship between a suspect and his companion can bear directly on the reasonableness of an officer's actions. Likewise, in the United States versus Silva, the court said that a suspect's companionship or proximity to someone independently suspected of criminal activity is a legitimate factor in assessing reasonable suspicion. In this case, the officer had just found a hidden loaded firearm on the driver. Again, the driver lied about having a firearm on him while the passenger sat within arm's reach of that driver. That companionship and proximity made it objectively reasonable to ensure the passenger wasn't armed. I believe those two cases are on point to speak to the driver's actions and how they can be connected to the passenger's actions. The fourth factor that the district court relied on in denying the motion to suppress was district court's conduct during the tariff risk and the government doesn't seem to address that issue. Was it appropriate for the district court to rely on that conduct? Yeah, I believe that the district court was appropriate in relying on that factor. I think, again, taken into the totality of the circumstances. Like the driver of the vehicle, Mr. Duxworth denied having a firearm on him and, likewise, Mr. Duxworth had a firearm located in almost the exact same location that the driver had a firearm located on him. Doesn't the issue of whether the frisk was justified turn on what the officer knew before he initiated the frisk? I think you can take that into account. I also think it's important to note that even if what's paramount here is the officer's safety. He was there by himself. He had already put the driver into his patrol car. He was already being detained while he was waiting on backup to return to arrive at the location. The officer was justified in approaching the passenger for his safety to make sure that this passenger was not armed like the driver was armed. Is the passenger's denial that he had a gun something that the officer could have relied upon in determining whether he had probable cause? Yes, I believe he could have taken that into account. Not just the fact that he denied, but all the circumstances surrounding the traffic at night. If we exclude Mr. Duxworth's compliance or non-compliance from the equation, is there still sufficient information to support the totality of the circumstances and probable cause? Yes, Your Honor. If we exclude Mr. Duxworth saying whether or not denying or or admitting the fact that he had a firearm on him, we can still take the other factors into consideration. Given, again, the high crime area, the time of the stop, the fact that the officer was alone, the fact that the driver had a firearm on him, and because of officer safety, we can take all those things into account. Your Honor, one thing that I believe is important here that I want to make sure to point out to the court is that this officer was not just acting on a hunch. He acted on facts. He was alone at night. This was a high-risk area. He had just found a hidden gun on one occupant, and he faced another who was within reach of multiple hiding places, given the fact that he was, according to Mr. Duxworth, he was disabled at the time and was unable to exit the vehicle. It's the government's position that under Terry and this court's reasoning in the Wilson and Silva cases, this officer's limited pat-down was a reasonable, necessary, and constitutional response to the crime. Your Honor, do you have any other questions for me? Thank you, Ms. Cole. Thank you, Your Honor. Mr. Jupiter for rebuttal. Your Honor, I think this court knows that the analysis of whether or not reasonable suspicion was present to support a Terry Fristown or anything even greater than that has to be the officer testified in this particular case that Duxworth, this is on record at 206, that Mr. Duxworth kept his hands up until the Frist started. So he was in compliance. The district court erred by saying that there was less than gracious compliance. I forget the exact non-compliance because that didn't start concededly until after the officer started the actual pat-down. What would you have had the officer do? Not you, but once he finished the driver, at that point, stop, call backup, other officers to come? Do our cases forbid him from proceeding further with respect to the passenger? Or let's say once the passenger says I'm disabled and he sees it, would you have us say, well, rather than him going further, he should call for backup, et cetera, et cetera, as opposed to the way that he proceeded? I know what you're arguing is wrong, but I'm just saying he's on the ground by himself. You heard counsel argue. So when he gets to the passenger and he says he's able and there's no dispute he is, he sees a walker in the back and all that sort of stuff. So would you say that within the totality of circumstances, or we all know the heart of the Fourth Amendment is what, reasonableness, right? Yes, sir. So would we- Keep your hands where I can see them. Keep your hands where I can see them. Now, I disagree. I don't know at what point the government is saying that he was outnumbered because Mr. Sledge is handcuffed in his patrol car, locked in his patrol car. So there's no more outnumbering, at least at that point, that I don't know what someone can do. They've been disarmed. The firearm's been made safe and he's sitting in the back of the patrol car, not to mention he says, run now, it's registered. Two officer briefings at that point. So once again, this court gave very specific guidance what you can do, what are the parameters here? And the court did that for a reason, it's not trying to tell police officers how to do the job, just telling them, look, this is a clear line you're going to be stepping over once you lick hands on somebody. And that's what happened here. The officer didn't hesitate to do that. And I don't think the officer's intent when he's told him to get out of the car was just sort of for him to get out of the car for him to look. He could have looked. And obviously he didn't even look in the car because he testified on cross-examination. When I asked him, you saw the walker in the back, he says, I didn't see the walker in the back because I didn't check back there. So he was not even trying to do a visual inspection as this court has directed officers to do in that particular situation. But nevertheless, and quite frankly, if he felt that type of fear from the beginning, we get back to are his actions reasonably related to the circumstances that started to stop in the first place, the second step of terror, because this was a malfunctioning tag light. The officer had no other facts at that particular time to indicate that this was something that was like he was investigating an aggravated armed robbery or anything like that in this particular case. It was a well-lit gas station that was open. They had pulled over. There are no facts to indicate that this was an armed and dangerous situation. And the government also talked about, there could be firearms under the seat, but it could have been firearms in the backseat. They could have been firearms somewhere else in the car. And that's why the office is allowed to do a visual inspection of the areas around there. But under this scenario that the officer has to do a more invasive search under that scenario, that would mean that an officer could search the whole car based on reasonable suspicion. And certainly that's not what this court would want to hold if the officer could actually get under the seat and do a much more invasive search in this particular area. Pennsylvania v. Mims and Maryland v. Williams and United States v. America certainly do not have that problem. Your time has expired, Mr. Cooperter. Your case is under submission.